R. Rex Parris, Esq. (SBN 96567)
rrparris@rrexparris.com
Alexander R. Wheeler, Esq. (SBN 239541)
awheeler@rrexparris.com
Kitty Szeto, Esq. (SBN 258136)
kszeto@rrexparris.com
John M. Bickford, Esq. (SBN 280929)
jbickford@rrexparris.com
**R. REX PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone: (661) 949-2595
Facsimile: (661) 949-7524

Attorneys for Plaintiffs, the Putative Class, and Aggrieved Employees

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDON CAMPBELL and RALPH MALDONADO; individually, and on behalf of members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA");<br><br>Plaintiffs,<br><br>vs.<br><br>VITRAN EXPRESS, INC., a Pennsylvania corporation formerly known as VITRAN EXPRESS WEST, INC., a Nevada corporation; and Does 1 through 100, inclusive.<br><br>Defendants. | Case No. 2:11-CV-05029-RGK-SH<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: November 9, 2015<br>Time: 9:00 a.m.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION .......... 1

FACTS .......... 2

- A. Vitran Is a Trucking Company That Provides Local Pick-Up and Delivery Services in California. .......... 2
- B. Providing On-Time Pick-Up and Delivery Services Is a "Critical" Part of Vitran's Business. .......... 3
- C. Vitran Admits That It Does Not Provide Its Drivers With Meal and Rest Breaks. .......... 4
- D. Nevertheless, Vitran Maintains a Written Meal and Rest Break Policy and Forces Drivers to Write Down That They Received Their Breaks Even Though They Did Not. .......... 7
- E. Vitran Has Only Paid Its Drivers Premium Pay on a Handful of Occasions, if At All. .......... 9

LEGAL STANDARD .......... 10

ARGUMENT .......... 11

- I. ALL RULE 23(A) PREREQUISITES ARE SATISFIED. .......... 11
  - A. The Class Is Sufficiently Numerous to Make Joinder Impractical. .......... 11
  - B. There Are Common Questions That Will Drive the Resolution of the Litigation. .......... 11
  - C. Plaintiffs' Claims Are Typical of the Claims and Defenses of the Class. .......... 14
  - D. Adequacy Is Satisfied. .......... 14

## TABLE OF CONTENTS

**PAGE**


II. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED. .................. 15

A. Predominance Is Satisfied. .................................................... 15

B. Superiority Is Satisfied. ........................................................ 17

CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ........ 10, 17

*Arias v. Superior* Court,
46 Cal. 4th 969 (2009) ........ 1

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ........ 13

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) ........ 10, 15

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir.1975) ........ 16

*Boyd v. Bank of Am. Corp.*,
300 F.R.D. 431 (C.D. Cal. 2014) ........ 16

*Bradley v. Networkers Int'l, LLC*,
211 Cal. App. 4th 1129 (2012) ........ 1

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ........ *passim*

*Campbell v. PricewaterhouseCoopers, LLP*,
287 F.R.D. 615 (E.D. Cal. 2012) ........ *passim*

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010)........ 14

*Edwards v. First Am. Corp.*,
289 F.R.D. 296 (C.D. Cal. 2012) ........ 11

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Eisen v. Carlisle & Jacquelin*,
391 F.2d 555 (2d Cir. 1968) .......... 1

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 10

*Ghazaryan v. Diva Limousine, Ltd.*,
169 Cal. App. 4th 1524 (2008) .......... 1, 17

*Giles v. St. Charles Health Sys., Inc.*,
294 F.R.D. 585 (D. Or. 2013) .......... 16

*Gonzales v. Arrow Fin. Servs. LLC*,
489 F. Supp. 2d 1140 (S.D. Cal. 2007) .......... 11

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981) .......... 1

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 12, 16

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 14

*In re Rubber Chem. Antirust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) .......... 11

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) .......... 12, 16

*Kirby v. Immoss Fire Protection, Inc.*,
274 Cal. 4th 1244 (2012) .......... 13

*Levya v. Medline Indus., Inc.*
716 F.3d 510 (9th Cir. 2013) .......... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Linder v. Thrifty Oil Co.*,
23 Cal. 4th 429 (2004) .......... 10

*Murphy v. Kenneth Cole Prod., Inc.*,
40 Cal. 4th 1094 (2007) .......... 13

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 12, 14

*Phelps v. 3PD, Inc.*,
261 F.R.D. 548 (D. Or. 2009) .......... 16

*Richmond v. Dart Inds., Inc.*,
29 Cal. 3d 462 (1981) .......... 1

*Sav-on Drug Stores, Inc. v. Superior Court*,
34 Cal. 4th 319 (2004) .......... 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .......... 10

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......... 15

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .......... 15

*United Steel Workers Int'l Union v. ConocoPhilips Co.*,
593 F.3d 802 (9th Cir. 2010) .......... 11

*Valentino v. Cartier-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .......... 17

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......... 10, 12, 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Yoshioka v. Charles Schwab Corp*,
No. 11-1625, 2011 WL 6748984 (N.D. Cal. Dec. 22, 2011) .......... 15

**Other Authorities**

1 Newberg on Class Actions § 3:12, n.9 (5th ed. 2011) .......... 11

Richard A Nagareda, *Class Certification in the Age of Aggregate Proof*,
84 N.Y.U. L. Rev. 97, 131–32 (2009) .......... 12

**Statutes**

Cal. Lab. Code § 226.7 .......... 13

Cal. Lab. Code § 512 .......... 12

**Rules**

Fed. R. Civ. P. 23(a) .......... 11

Fed. R. Civ. P. 23(a)(2) .......... 11

Fed. R. Civ. P. 23(a)(3) .......... 14

Fed. R. Civ. P. 23(a)(4) .......... 14

Fed. R. Civ. P. 23(b)(3) .......... 1, 15, 16, 17

**Regulations**

Cal. Code Regs. tit. 8, §11090(11) .......... 12, 13

## INTRODUCTION

"Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). " 'By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' " *Richmond v. Dart Inds., Inc.*, 29 Cal. 3d 462, 469 (1981) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968)). This is especially true in the wage-and-hour context, where California has adopted a public policy that "supports the use of class actions to enforce California's [wage-and-hour laws] for the benefit of workers." *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1141 (2012); *see also Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008) (noting that "wage and hour disputes . . . routinely proceed as class actions" (internal quotation marks omitted)).

Here, Plaintiffs Brandon Campbell and Ralph Maldonado ("Plaintiffs") seek to certify the following class against their former employer, Vitran Express Inc., and Vitran Express West, Inc. (collectively "Vitran"), under Federal Rule of Civil Procedure 23(b)(3):

> All current and former "City Drivers" or "Local Drivers" and employees in similar job titles, who worked for Vitran Express, Inc. within the State of California that were not paid premium wages for working through rest and meal breaks at any time during the period of four years before the filing of this Complaint to final judgment.

This class will be used to determine Vitran's liability as to all of Plaintiffs' claims, except their PAGA claim, which does not need to be certified in order to proceed collectively. *See Arias v. Superior* Court, 46 Cal. 4th 969, 975 (2009) (holding that class certification requirements "need not be met when an employee's representative action against an

employer is seeking civil penalties under the Labor Code Private Attorneys General Act of 2004").

Certification is based on the fact that Plaintiffs' theory of classwide liability is based on uniform, classwide policies and procedures that Plaintiffs allege directly contradict California's meal and rest break laws. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1033 (2012) (noting that claims that a "uniform policy consistently applies to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment"). For example, Vitran admitted earlier in this litigation that it believed California's meal and rest break laws were preempted as applied to its drivers, and therefore it took no steps to provide its drivers with meal and rest breaks. This was confirmed by its dispatchers, who testified that they did not factor in meal and rest breaks when putting together their drivers' routes. As a result, drivers testify that they were never provided the opportunity to take their breaks. As a result, these common actions (or lack thereof) on the part of Vitran can be examined collectively to determine whether it met its obligation under the Labor Code to provide breaks to its drivers.

The other requirements for class certification are also easily satisfied. Plaintiffs are typical and adequate, and the class is sufficiently numerous and superior to other methods of adjudication. The Court should therefore grant Plaintiffs' motion.

## FACTS

### A. Vitran Is a Trucking Company That Provides Local Pick-Up and Delivery Services in California.

Vitran is a trucking company that operates throughout Canada and the United States. PA 7 (Ex. 1.A) (Kuska Depo. at 26:2–15). During the relevant period, it operated six terminals in California: San Leandro, Fresno, Fontana, Sacramento, Santa Fe Springs, and Bishop. PA 59 (Ex. 2.A) (Vitran's Responses to Special Interrogatories (Set One) at 10:5–21). These terminals employ two different types of truck drivers: road drivers and local/city drivers. PA 5 (Ex. 1.A) (Kuska Depo. at 22:10–14). Road drivers are

responsible for transporting "trailers from terminal to terminal" and "interstate driving" beyond a hundred miles "from their point of origin." PA 6 (Ex. 1.A) (Kuska Depo. at 23:2–7). Local/city drivers, on the other hand, are responsible for picking-up and delivering local freight to and from Vitran's clients, typically retail stores, located around its terminals. PA 65 (Ex 2.B.) (Vitran's Supplemental Responses to Interrogatories (Set One) at 5:8–16); *see also* PA 5 (Ex. 1.A) (Kuska Depo. at 22:10–14); PA 7 (Ex. 1.A) (Kuska Depo. at 26:16–27:3). This case concerns the later type of driver: the local/city drivers (hereafter referred to simply as "drivers").

### B. <u>Providing On-Time Pick-Up and Delivery Services Is a "Critical" Part of Vitran's Business.</u>

The drivers' job duties are "[e]ssentially the same." PA 9 (Ex. 1.A) (Kuska Depo. at 41:22–42:3); *see also* PA 9–10 (Ex. 1.A) (Kuska Depo. at 42:23–43:18) (explaining "all duties performed by local drivers in California are interchangeable"). During the first half of the day, they make deliveries. When these are done, they transition into pick-ups. PA 117 (Ex. 3) (Rios Decl., ¶ 3). Their routes are provided to them by their terminal dispatcher, who generally manages the drivers' daily activities. PA 117 (Ex. 3) (Rios Decl., ¶ 2).

Managing "[p]ick-up and delivery is a high-pressure operation." PA 118 (Ex. 3) (Rios Decl., ¶ 4).[1] This is because Vitran's clients expect their deliveries and pick-ups to be made on time. PA 12 (Ex. 1.A) (Kuska Depo. at 45:11–22). Indeed, Vitran has stated that it is "critical . . . that its drivers provide on-time pickup and delivery services for its customers" and that its "business suffers significantly when its deliveries are late." PA 87

---

[1] *See also* PA 122 (Ex. 4.A) (Alduenda Decl., ¶ 5); PA 124 (Ex. 4.B) (Black Decl., ¶ 5); PA 126 (Ex. 4.C) (Contreras Decl., ¶ 5); PA 128 (Ex. 4.D) (Davenport Decl., ¶ 4); PA 130 (Ex. 4.E) (Elbers Decl., ¶ 5); PA 132 (Ex. 4.F) (Ford Decl., ¶ 5); PA 134 (Ex. 4.G) (Machado Decl., ¶ 5); PA 136 (Ex. 4.H) (Maningoine Decl., ¶ 5); PA 138 (Ex. 4.I) (Martinez Decl., ¶ 5); PA 140 (Ex. 4.J) (Ross Decl., ¶ 5); PA 142 (Ex. 4.K) (Sierra Decl., ¶ 5); PA 145 (Ex. 4.L) (Ticoulat Decl., ¶ 5); PA 147 (Ex. 4.M) (Trujillo Decl., ¶ 5).

(Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 8:24–27). As a result, "timely delivery and pick-up [is] highly emphasized by Vitran's management." PA 118 (Ex. 3) (Rios Decl., ¶ 4).

In order to ensure deliveries and pick-ups are made on time, dispatchers must create routes that take into consideration the client's needs and limitations. PA 117 (Ex. 3) (Rios Decl., ¶ 3). This includes accounting for "[e]arly closures, committed time deliveries, size of the freight, weight of the freight, customers' dock hours, customers' access to equipment such as a forklift, and destination." *Id.* As a result, drivers do not have the discretion to alter the pick-up and delivery routes provided by their dispatcher. *Id.*

**C. <u>Vitran Admits That It Does Not Provide Its Drivers With Meal and Rest Breaks.</u>**

Given these demanding requirements, Vitran does not provide its drivers with meal and rest breaks. Dispatchers were specifically instructed not to grant requests for breaks, and to reprimand any drivers who took—or even requested to take—a break. PA 118 (Ex. 3) (Rios Decl., ¶ 5). For example, dispatcher Shawn Rios testified that his "supervisor, Bob Stalnaker, specifically told [him] that [he] was not to grant any requests for breaks or meal periods." *Id.* Accordingly, Rios "never provided any drivers with an opportunity for meal or rest breaks and [he] specifically prevented all drivers from taking a meal or rest break." *Id.*

Indeed, Vitran has admitted that its current pick-up and delivery commitments make it impossible for it to provide its drivers with breaks. Earlier in this case, it stated that providing meal and rest breaks each day would be enormously time consuming and detrimental to its business operations given the realities of driving a big-rig. Specifically, it argued that "[b]y imposing several additional stop requirements on drivers to take meal and rest breaks while in California," drivers would be forced to spend "almost a third of their day repeating the many tasks involved in driving, parking, inspecting the load and load controlling devices, and maneuvering a tractor-trailer into and out of a parking space

and through surface streets in order to take meal and rest breaks. PA 87 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 8:12–16). As a result,

> [i]f a driver must make 3 additional stops to take two 10-minute rest breaks and one 30-minute meal break in an 8 hour shift, the driver will need to spend 40 minutes taking the first rest break (30 minutes for additional driving, parking, and inspecting activities, along with the additional 10 minute rest break), another 60 minutes to take a meal break (30 minutes for driving, parking, and inspecting activities, along with the additional 30 minute, duty free meal break) and another 40 minutes to take the second rest break (30 minutes for additional driving, parking, and inspecting activities, along with the additional 10 minute rest break). This is a total of 140 minutes, or 2 hours and 20 minutes spent on breaks in an 8 hours day.

PA 86 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 7:24–8:6). Vitran therefore asked the Court to find its drivers exempt from California's meal and rest break laws so it would not have to "*re-design*" its routes,[2] in order to accommodate "several, *additional* daily stops for meal and rest breaks" for its drivers.[3] PA 88 (Ex. 2.E) (Vitran's Mot. J. on the

---

[2] *See also* PA 96 (Ex 2.E) (Vitran's Mot. J. on the Pleadings at 17:6–11) (explaining that in order to provide meal and rest break to its drivers, it will "need to *re-design* routes to ensure that drivers are near locations, like truck and rest stops, that provide safe and legal parking . . . that enable a driver to take a restful break" (emphasis added)); PA 107 (Ex 2.E) (Vitran's Reply ISO Mot. J. on the Pleadings at 6:9–10) (explaining it "has provided irrefutable facts that [complying with California's meal and rest break laws] will bind Vitran to *shorten* its routes and *reduce* its delivery services" (emphases added)); PA 108 (Ex 2.F) (Vitran's Reply ISO Mot. J. on the Pleadings at 7:22–24) (explaining that "[*a*]*dding* 30 minutes for each meal break, and 10 minutes each for multiple rest breaks per day, will undoubtedly force Vitran to reduce routes and deliveries" (emphasis added)).

[3] *See also* PA 88 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 9:17–19) (explaining

Pleadings at 9:9–19) (italics added). Nevertheless, after a lengthy appeal, the Ninth Circuit held that the application of California's meal and rest break laws to Vitran's drivers were not preempted, and Vitran therefore had to provide its drivers with compliant meal and rest breaks. PA 114–15 (Ex. 2.G) (Ninth Circuit Memorandum Disposition).

As a result of Vitran's policy of not providing meal and rest breaks, drivers report it was extremely difficult to find time to take their breaks. For example, Plaintiffs testified that they almost never had the opportunity to take their breaks because their dispatchers wouldn't allow it.[4] Other drivers confirm Plaintiffs' experiences.[5] Although drivers

---

that complying with California's meal and rest break laws will force it "to schedule several, *additional*, daily stops for drivers to take meal and rest breaks" (emphasis added)); PA 96 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 17:6–11) (explaining that "[f]orcing drivers to make *additional* stops to take breaks will require them to zigzag their way along their routes to make the 3 to 5 *additional* meal and rest break stops" (emphases added)); PA 96 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 17:28–3) (explaining it "presented undisputed material facts that forcing Vitran's drivers to make several *additional* detours from their daily routes in order to make stops for meal and rest breaks *will* significantly impact Vitran's routes and services" (emphases added)); PA 96 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 17:15–16) (explaining that complying with California's meal and rest break laws will force it "to take fewer and shorter routes, and . . . to make fewer deliveries"); PA 96 (Ex. 2.E) (Vitran's Mot. J. on the Pleadings at 17:20–24) (explaining that "[b]y forcing Vitran's drivers to make several, additional, daily stops, Vitran will lose about 30% of its current driver capacity to serve its customers in California").

[4] PA 26–27 (Ex. 1.B) (Maldanado Depo. at 75:9–76:3) (confirming dispatcher wouldn't allow breaks); PA 44–45 (Ex. 1.C) (Campbell Depo. at 44:5–45:7) (same).

[5] *See, e.g.*, PA 122–23 (Ex. 4.A) (Alduenda Decl., ¶¶ 5, 7–8); PA 124–25 (Ex. 4.B) (Black Decl., ¶¶ 5, 7–8); PA 126–27 (Ex. 4.C) (Contreras Decl., ¶¶ 5, 7–8); PA 128–29 (Ex. 4.D) (Davenport Decl., ¶¶ 4–6); PA 130–31 (Ex. 4.E) (Elbers Decl., ¶¶ 5, 7–8); PA 132–33 (Ex. 4.F) (Ford Decl., ¶¶ 5, 7–8); PA 134–35 (Ex. 4.G) (Machado Decl., ¶¶ 5–7,); PA 136–37 (Ex. 4.H) (Maningoine Decl., ¶¶ 5, 7–8); PA 138–39 (Ex. 4.I) (Martinez Decl., ¶¶ 5, 7–8); PA 140 (Ex. 4.J) (Ross Decl., ¶¶ 5–7); PA 142–143(Ex. 4.K) (Sierra Decl.,

complained about this, both to each other and to Vitran's management, Vitran took no steps to comply with the law.[6]

**D. <u>Nevertheless, Vitran Maintains a Written Meal and Rest Break Policy and Forces Drivers to Write Down That They Received Their Breaks Even Though They Did Not.</u>**

Despite admitting that it does not provide its drivers with meal and rest breaks, Vitran has nevertheless promulgated official meal and rest break policies. Two documents set forth its meal break policy. The first document is its employee handbook, which all drivers receive and are required to agree to. It reads:

> All employees in California are entitled to a 30-minute lunch period when working 5 or more hours in a day. ***Unless otherwise designated on an employee's timecard by his or her supervisor, 30 minutes per day will be considered as non paid time for hourly employees whose work day is in excess of the hours noted above.***

---

¶¶ 5–6, 8–9); PA 145–46 (Ex. 4.L) (Ticoulat Decl., ¶¶ 5, 7–8); PA 147–48 (Ex. 4.M) (Trujillo Decl., ¶¶ 5, 7).

[6] PA 43 (Ex. 1.C) (Campbell Depo. at 25:3–23) (confirming other drivers complained about not taking meal breaks in meetings); PA 49 (Ex. 1.C) (Campbell Depo. at 209:19–210:15) (explaining "a lot of people complained every day about not having a lunch" to their dispatchers); PA 51 (Ex. 1.C) (Campbell Depo. at 212:5–13) (confirming he asked his dispatcher "how come we can't take a lunch?" and "[w]hat do you got to do to get a lunch around here?"); PA 52 (Ex. 1.C) (Campbell Depo. at 220:1–18) ("[I]t's bullshit that I even have to do this . . . if I don't take a lunch, why do I have to put it on there? That's lying."); PA 28–29 (Ex. 1.B) (Maldonado Depo. at 79:10–80:20) (confirming he complained to management and to all of his co-workers); PA 24–25 (Ex. 1.B) (Maldonado Depo. at 73:17–74:11) (confirming "everyone – so far as [he] know[s], never got to take an uninterrupted 30-minute meal period" or "rest breaks"); PA 23–24 (Ex. 1.B) (Maldonado Depo. at 72:18–73:25) (confirming he spoke to "the whole yard" about not getting breaks and that "everyone complained about the same thing").

PA 69 (Ex. 2.C) (VITR0000522) (emphasis and boldface in original). The other is a disciplinary form that is placed in a driver's personnel file whenever he or she fails to indicate on their pick up manifest that they took a meal break. It reads:

> **ALL** Vitran West LAX Employees are to take a lunch break between the fourth and sixth hour. This topic has been discussed in prior meetings and the most recent being this past Wednesday . . . . Taking a lunch break is not an option and is mandatory by the State of California.
>
> On Wednesday's meeting, all drivers were instructed to take a lunch break between the fourth and sixth hour after notifying dispatch. Drivers were instructed to write down the time your lunch was taken on the <u>pick up manifest</u>.

PA 71 (Ex. 2.D) (VITR0000485) (boldface and underline in original). Notably, Vitran's meal break policy makes no mention of the right to take a second meal period if a shift lasts over 10 hours.

In order to make it appear as if its drivers always received a meal break each day, drivers are required to indicate on their pick-up manifest that they did, even though they were not provided with breaks.[7] If they complain about this practice, they are disciplined and can even be terminated. PA 117 (Ex. 3) (Rios Decl., ¶ 7).[8]

---

[7] PA 48 (Ex. 1.C) (Campbell Depo. at 204:4–16); PA 52 (Ex. 1.C) (Campbell Depo. at 220:1–18); PA 30–31 (Ex. 1.B) (Maldonado Depo. at 94:20–95:8); PA 34 (Ex. 1.B) (Maldonado Depo. at 114:2–14); PA 118 (Ex. 3) (Rios Decl., ¶ 7); PA 122 (Ex. 4.A) (Alduenda Decl., ¶ 6); PA 124 (Ex. 4.B) (Black Decl., ¶ 6); PA 126 (Ex. 4.C) (Contreras Decl., ¶ 6); PA 132 (Ex. 4.F) (Ford Decl., ¶ 6); PA 136–37 (Ex. 4.H) (Maningoine Decl., ¶ 6); PA 138 (Ex. 4.I) (Martinez Decl., ¶ 6); PA 143 (Ex. 4.K) (Sierra Decl., ¶ 7); PA 145 (Ex. 4.L) (Ticoulat Decl., ¶ 6); PA 147 (Ex. 4.M) (Trujillo Decl., ¶ 6).

[8] *See also* PA 46–48 (Ex. 1.C) (Campbell Depo. at 202:23–204:3) (explaining he was

Concerning rest breaks, Vitran's written policy states:

> All VITRAN EXPRESS WEST employees are entitled to a 15-minute break per 4 hours of work. A break is not required for employees whose total daily work time is less than 3 1/2 hours. Breaks may not be added to the 30 minute lunch period in order to extend the lunch period. Breaks may not be taken as the beginning or ending of a work shift to adjust the start or ending time of the shift.

PA 69 (Ex. 2.C) (VITR0000522). Nowhere, however, is there any mention that a break must be provided every four-hour period or "major fraction thereof," nor does it state that rest periods should be taken in the middle of the work period "insofar as practicable."

**E. Vitran Has Only Paid Its Drivers Premium Pay on a Handful of Occasions, if At All.**

To make matters worse, Vitran does not have an automatic system in place to pay its drivers with premium pay when they are not provided with breaks. PA 13 (Ex. 1.A) (Kuska Depo. at 94:8–11). A driver can only receive premium pay after going through a complicated approval process. First, the driver must communicate Vitran's failure to provide him with a break to either his dispatcher or terminal manager, PA 14 (Ex. 1.A) (Kuska Depo. at 95:15–23), which would subject that driver to discipline. After that, the terminal manager has to go into Vitran's electronic timekeeping system and create an exception to the automatic meal break deduction. PA 15 (Ex. 1.A) (Kuska Depo. at 96:15–19). That information is then transmitted to Vitran's general payroll administer, who must then contact the Vice-President of Human Resources for approval. PA 16 (Ex.

---

told by management that if he didn't start recording lunches, his "next step is termination"); PA 30 (Ex. 1.B) (Maldonado Depo. at 94:1–95:8) (explaining "I was going to get fired if I didn't falsify on the paper that I . . . wasn't taking my lunch"); PA X (Ex. 1.B) (Maldonado Depo. at 96:24–97:6) (same).

1.A) (Kuska Depo. at 97:8–13). As a result of this process, Vitran has paid out premium pay less than five times since 2009. PA 16 (Ex. 1.A) (Kuska Depo. at 97:20–25).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides that " '[a] class action may be maintained if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b).' " *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (alteration in original) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)).

Rule 23 is not "a mere pleading standard," so establishing its requirements sometimes requires affirmative evidence, which courts must subject to a " 'rigorous analysis.' " *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). While such rigor "may 'entail some overlap with the merits of the plaintiff's underlying claim,' " the likelihood of overlap is "no license to engage in free-ranging merits inquires at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551)). This is because "[t]he certification question is 'essentially a procedural one,' " *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 326 (2004) (quoting *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 439–40 (2004)), which examines "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment," *id.* at 327. Accordingly, courts must assume the plaintiff's claims have merit and resolve disputes regarding the merits only when necessary to determine whether an element for class certification is satisfied. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1023 (2012).

Finally, courts "retain[ ] the flexibility to address problems with a certified class as they arise, including the ability to decertify." *United Steel Workers Int'l Union v. ConocoPhilips Co.*, 593 F.3d 802, 807 (9th Cir. 2010). Therefore, any initial " 'doubts regarding the propriety of class certification should be resolved in favor of certification.' " *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 299–300 (C.D. Cal. 2012) (quoting *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)).

## ARGUMENT

As fully explained below, all of Rule 23(a)'s prerequisites are satisfied, and the class falls within the parameters of Rule 23(b)(3). Accordingly, the class should be certified.

## I. ALL RULE 23(A) PREREQUISITES ARE SATISFIED.

Rule 23(a) has four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). All of these are explained and satisfied below.

### A. The Class Is Sufficiently Numerous to Make Joinder Impractical.

Numerosity is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement, the plaintiff does not demonstrate the exact number of class members, nor is there a particular "magic number" that is required. *See In re Rubber Chem. Antirust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005). Nevertheless, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *See* 1 Newberg on Class Actions § 3:12, n.9 (5th ed. 2011) (citing cases). Here, Vitran previously identified 156 drivers that would fall within Plaintiffs' proposed class. *See* Notice of Removal at 6:8 (Dkt # 9-1). Numerosity is therefore satisfied.

### B. There Are Common Questions That Will Drive the Resolution of the Litigation.

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that the class members' claims "depend upon a

common contention" whose "truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. "All questions of fact and law need not be common to satisfy th[is] rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Put differently, commonality is satisfied if the answers to the common questions have the capacity to "drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (quoting Richard A Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

"Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); *accord Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims."). Accordingly, since all of Plaintiffs' claims are predicated on Vitran's alleged failure to comply with California's meal and rest period requirements, the Court must examine the underlying law behind those requirements and determine whether Plaintiffs' theory of recovery will "drive the resolution" of their meal and rest break claims.

California law "obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." *Brinker*, 53 Cal. 4th at 1018. Generally, an employer must "provide" an employee a 30-minute meal break for a work period of more than 5 hours, with certain specified waivers, and a second meal period after not more than 10 hours of work. *See* Cal. Lab. Code § 512; Cal. Code Regs. tit. 8, §11090(11); *accord Brinker*, 53 Cal. 4th at 1049. Additionally, an employer has a duty to "authorize and permit" 10-minute rest breaks for every four-hour period or "major fraction thereof," which "insofar as practicable shall be in the middle of each work period." Cal. Code Regs. tit. 8, §11090(11); *accord*, *Brinker*, 53 Cal. 4th at 1028. An employer satisfies these obligations if it "relieves its employees of all duty, relinquishes control over their

activities and permits them a reasonable opportunity to take an uninterrupted [break], and does not impede or discourage them from doing so." *Brinker*, 53 Cal. 4th at 1040. So, while an employer is not required to "police" breaks to ensure no work is performed, "an employer may not undermine a formal policy of providing meal [and rest] breaks by pressuring employees to perform their duties in a way that omit breaks." *Id.* Employers who fail in these requirements must "pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Lab. Code § 226.7. This "additional hour of pay" is not a penalty, but a "premium wage," similar to overtime pay, *see Murphy v. Kenneth Cole Prod., Inc.*, 40 Cal. 4th 1094, 1113–14 (2007), which is paid "for the nonprovision of meal and rest periods," *Kirby v. Immoss Fire Protection, Inc.*, 274 Cal. 4th 1244, 1255 (2012).

Here, the common question that will drive the resolution of the litigation is whether Vitran met its obligation to provide its drivers with meal and rest breaks. This will be proved by the common fact that Vitran has admitted—and the dispatchers have confirmed—that Vitran did nothing to provide meal and rest breaks to its driver because it believed that these laws were preempted as applied to its drivers. Accordingly, because Vitran's treatment of its drivers was the same, commonality is easily satisfied. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (explaining "that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members"); *Brinker*, 53 Cal.4th at 1033 [explaining that claims that a "uniform policy consistently applies to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment").

Additionally, even if Vitran hadn't admitted that it doesn't provide its drivers with meal and rest breaks, common questions still exist as to whether its official meal and rest break policies are even lawful. After all, its rest break policy fails to inform drivers that rest breaks must be provided every four-hour period or "major fraction thereof," nor does it state that rest periods should be taken in the middle of the work period "insofar as practicable." Cal. Code Regs. tit. 8, §11090(11) And its meal break policy fails to inform

crew members that they are entitled to a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work" (*Brinker*, *supra*, 53 Cal.4th at p. 1041). This "theory of liability—that [Vitran] has a uniform policy and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." *Id.* Accordingly, commonality is satisfied.

### C. <u>Plaintiffs' Claims Are Typical of the Claims and Defenses of the Class.</u>

Typicality requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Although the 'commonality and typicality requirements . . . tend to merge,' each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to the class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 2541 (2011). In other words, typicality tests whether the other members of the class " 'have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Parsons*, 754 F.3d at 685 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, Plaintiffs' claims arise out of the same course of conduct—i.e., Vitran's admission that it does not provide its drivers with meal and rest breaks—as the absent class members. Additionally, there are no defenses unique to Plaintiffs that will be a major focus of the litigation, nor do they have any interests antagonistic to the class. Typically is therefore satisfied.

### D. <u>Adequacy Is Satisfied.</u>

Adequacy of representation requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, [courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class

members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, there are no conflicts between Plaintiffs and the class, *see* PA 150 (Ex. 5) (Campbell Decl., ¶ 3); PA 154 (Ex. 6) (Maldonado Decl., ¶3), and it is highly unlikely that a conflict would exist given the common practice of Vitran of failing to provide meal and rest breaks. *See Yoshioka v. Charles Schwab Corp*, No. 11-1625, 2011 WL 6748984, at *5 (N.D. Cal. Dec. 22, 2011) (finding first factor of commonality met because, "apart from her proposed incentive award, [the plaintiff] will receive the same relief as the class as a whole and there is no apparent conflict of interest between herself and the class"). Plaintiffs also understand the duties of acting as class representatives, *see* PA 150–51 (Ex. 5) (Campbell Decl., ¶¶ 4–5); PA 154–55 (Ex. 6) (Maldonado Decl., ¶¶ 4–5), and have hired experienced counsel who will fairly, responsibly, and vigorously represent the interests of the class, *see* PA 158–59 (Ex. 7) (Parris Decl., ¶¶ 1–5). Adequacy is therefore satisfied.

## II. <u>THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED.</u>

Since the four prerequisites of Rule 23(a) are satisfied, Plaintiffs need only demonstrate that their proposed class fits into one of three categories described in Rule 23(b). *Bateman*, 623 F.3d at 712. Here, Plaintiffs seek certification under (b)(3), which has two requirements: (1) predominance and (2) superiority. *See* Fed. R. Civ. P. 23(b)(3). Both are satisfied below.

### A. <u>Predominance Is Satisfied.</u>

Predominance requires the "question of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). It focuses "on the relationship between common and individual issues," *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotation marks omitted), and "tests whether the proposed class[ ] [is] sufficiently cohesive to warrant adjudication by representation, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24

(1997). By its own terms, this does not mean a plaintiff must " 'establish that there are no individualized issues, only that the class issues predominate.' " (*Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 594 (D. Or. 2013) (quoting *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 559 (D. Or. 2009)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation maters omitted).

Notably, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)," especially in a wage-and-hour case. *Levya v. Medline Indus., Inc.* 716 F.3d 510, 514 (9th Cir. 2013); *see also Dukes*, 131 S.Ct. at 2558 ("individualized monetary claims belong in Rule 23(b)(3)"). As the Ninth Circuit recently explained, "damages determinations are individual in nearly all wage-and-hour class actions," and therefore any rule requiring " 'decertif[ication] [of] a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.' " *Levya*, 716 F.3d at 513–14 (quoting *Brinker*, 53 Cal. 4th at 354). " '[T]he amount of damages is invariably an individual question and does not defeat class action treatment.' " *Id.* at 514 (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975)); *see also Jimenez*, 765 F.3d at 1167–68.

Here, there are no individual issues for Plaintiffs' meal and rest break claims—let alone ones that could predominate. As explained above, the common question is whether Vitran met its obligation to provide breaks to its drivers. Since Vitran has admitted it did not because it believed that it wasn't required to comply with California law, the question of whether it did provide breaks is common to all class members. *See Campbell v. PricewaterhouseCoopers, LLP*, 287 F.R.D. 615, 624 n.16 (E.D. Cal. 2012) (holding that there were "no individual issues" because the claim was "not that the employees did not take the breaks—which would present individual issues—but that they were not 'provided' to the class members"); *see also Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 441 (C.D. Cal. 2014) (noting that "[a]fter *Brinker*, common questions will often

predominate with regard to meal and rest break claims" because the common question focuses on the employer's policies and practices regarding its obligation to provide meal and rest breaks). In other words, the class here is "entirely cohesive: It will prevail or fall in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen*, 133 S. Ct. at 1191.

**B. <u>Superiority Is Satisfied.</u>**

Superiority requires the plaintiff to demonstrate that class treatment "is superior to other available methods" of adjudication. Fed. R. Civ. P. 23(b)(3). A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Cartier-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Court have widely recognized that class actions alleging an employer systematically violated California's wage-and-hour laws are particular well-suited for class treatment. *See Ghazaryan*, 169 Cal. App. 4th at 1538 (noting that "wage and hour disputes . . . routinely proceed as class actions" (internal quotation marks omitted)).

Here, because common questions of law and fact predominate, judicial economy and the parties' resources will be furthered by class treatment. As explained above, classwide liability can be established by adjudicating Vitran's common policies, and the adjudication of these common policies will predominate over any purported individual issues. Therefore, rather than conducting over 150 individual mini-trial for each member of the proposed class, it makes more sense to prove the elements of liability through common proof. Class treatment is clearly superior.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

## CONCLUSION

As explained above, Plaintiffs have satisfied the procedural requirements for certification under Federal Rule of Civil Procedure 23. The Court should therefore grant Plaintiffs' motion, and certify the class.

Date: October 10, 2015

**R. REX PARRIS LAW FIRM**

By: /s/ *John M. Bickford*
Kitty K. Szeto
John M. Bickford

Attorneys for Plaintiffs, the Putative Class, and the Aggrieved Employees