1  R. Rex Parris, Esq. (SBN 96567)
       rrparris@rrexparris.com
2  Alexander R. Wheeler, Esq. (SBN 239541)
       awheeler@rrexparris.com
3  Kitty K. Szeto, Esq. (SBN 258136)
       kszeto@rrexparris.com
4  **R. REX PARRIS LAW FIRM**
   43364 10th Street West
5  Lancaster, California 93534
   Telephone:      (661) 949-2595
6  Facsimile:      (661) 949-7524

7  Attorneys for Plaintiffs

8

9

10                  **UNITED STATES DISTRICT COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12

13  BRANDON CAMPBELL and RALPH              )   Case No. 2:11-CV-05029-RGK-SS
    MALDONADO; individually, and on behalf  )
14  of members of the general public similarly )   **CLASS ACTION**
    situated, and as aggrieved employees pursuant )
15  to the Private Attorneys General Act     )   **MEMORANDUM OF POINTS AND AUTHORITIES**
    ("PAGA");                                )   **IN SUPPORT OF PLAINTIFFS' MOTION FOR**
16                                           )   **FINAL APPROVAL OF CLASS ACTION**
                                             )   **SETTLEMENT, ATTORNEYS' FEES, COSTS,**
17                      Plaintiffs,          )   **AND SERVICE ENHANCEMENT AWARD**
                                             )
18         vs.                               )   [Filed Together with Plaintiffs' Notice of
                                             )   Motion; Declarations of Alexander R.
19  VITRAN EXPRESS, INC., a Pennsylvania     )   Wheeler, Stephen Gomez, Brandon Campbell,
    corporation formerly known as VITRAN     )   and Ralph Maldonado; and [Proposed] Order]
20  EXPRESS WEST, INC., a Nevada             )
    corporation; and Does 1 through 100,     )
21  inclusive.                               )   Date:          August 1, 2016
                                             )   Time:          9:00 a.m.
22                                           )   Courtroom:     850
                      Defendants.            )
23                                           )
                                             )
24  _____ )

25

26

27

28

_____
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

1.   SUMMARY OF MOTION ........................................................................... 1

2.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND ........................... 2

3.   SUMMARY OF THE SETTLEMENT TERMS ............................................... 3

4.   THE CLAIMS ADMINISTRATION PROCESS ............................................ 4

5.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT. ........ 4

    A.   The Strength of Plaintiffs' Case ................................................ 5

    B.   Risk, Expense, Complexity, and Likely Duration of Further Litigation. ............... 6

    C.   Amount Offered in Settlement. ................................................. 7

    D.   The Extent of Discovery Completed and Stage of Proceedings. .......................... 7

    E.   Experience and Views of Counsel. ............................................. 8

    F.   Reaction of the Class Members. ............................................... 8

6.   LEGAL STANDARDS FOR ATTORNEYS' FEES IN A CLASS ACTION SETTLEMENT. .................. 9

7.   THE ATTORNEYS' FEE REUEST IS JUSTIFIED UNDER THE COMMON FUND METHOD .......... 11

    A.   The Risks Assumed by Class Counsel Favor the Fee Award Sought .................. 13

    B.   Class Counsel Obtained an Excellent Result for the Class. ......................... 14

    C.   Class Counsel's Award is Relatively Modest. ..................................... 14

    D.   Class Counsel Obtained Swift and Efficient Relief for the Class. .................... 15

    E.   The Skill and Reputation of Plaintiff's Counsel Justifies the Fee Requested. ....... 15

    F   Class Counsel's Lodestar Well Exceeds the Fee Request. ........................... 16

8.   CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES ARE REASONABLE. ................... 16

9.   CLAIMS ADMINISTRATION COSTS TO SIMPLURIS, INC. ARE REASONABLE. .................. 17

10.  THE *REDUCED* SERVICE ENHANCEMENT AWARDS ARE FAIR AND REASONABLE. ............... 17

11.  CONCLUSION ..................................................................................... 20

i

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*Acosta v. Trans Union,*
   243 F.R.D. 377, 386 (C.D. Cal. 2007) ...................................................... 4

*Armstrong v. Whirlpool Corp.,*
   2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) .............................. 13

*Blum v. Stenson,*
   465 U.S. 886, 900 n.16 (1984) ....................................................... 11

*Boeing Co. v. Van Gernert*
   (1980) 444 U.S. 472 ........................................................... 9, 11, 12

*Brotherton v. Cleveland,*
   141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) .............................. 19

*Brytus v. Spang & Co.*
   (3rd Cir. 2000) 203 F.3d 238 .......................................................... 10

*Fischel v. Equitable Life Assur. Society of U.S.,*
   307 F.3d 997, 1006-1008 (9th Cir. 2002) ...................................... 16

*Garner v. State Farm Mut. Auto. Ins. Co.,*
   No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) ................................. 19

*Glass v. UBS Financial Services, Inc.,*
   2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007) ........................ 12

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011, 1026 (9th Cir. 1998) .............................................. 13

*In re KeySpan Corp. Sec. Litig.,*
   No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35
   (E.D.N.Y. Aug. 25, 2005) ................................................................. 14

*In re Pacific Enterprises Security Litigation,*
   47 F.3d 373, 379 (9th Cir. 1995) ................................................... 11

i

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*In Re Southern Ohio Correctional Facility*,
175 F.R.D. 270, 272 (S.D. Ohio 1997) ..................................................................... 18

*In re Washington Public Power Supply Sys. Sec. Litig.*,
19 F.3d 1291, 1300 (9th Cir. 1994) ................................................................. 13, 14

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685, 694 (N.D. Ga. 2001).................................................................... 18

*Lealao v. Beneficial Cal., Inc.*
(2000) 82 Cal.App.4th 19 ....................................................................................... 9, 10

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234, 1242 (9th Cir. 1998) ......................................................................... 4

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423, 437 (2d Cir. 2006)............................................................................. 12

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)................................................................................................. 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268, 272 (9th Cir. 1989) .............................................................. 10, 11, 12

*Razilov v. Nationwide Mut. Ins. Co.*,
No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006)................................. 19

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948, 965 (9th Cir. 2009) .............................................................................. 4

*Serrano v. Priest*
(1977) 20 Cal.3d 25 .................................................................................................. 8

*Singer v. Becton Dickinson and Co.*,
08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010)............................ 19

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301, 1311 (9th Cir. 1990) ................................................................. 11, 12

ii

### TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Smith v. CRST Van Expedited, Inc.,*
   No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013)................... 19

*Vincent v. Hughes Air West, Inc.*
   (9th Cir. 1977) 557 F.2d 759 .................................................................................. 9

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043, 1047 (9th Cir. 2002) ......................................................... passim

*Waters v. International Precious Metals Corp.,*
   190 F.3d 1291, 1295-96 (11th Cir. 1999) ............................................................ 12

*Williams v. MGM-Pathe Communications,*
   129 F.3d 1026, 1026-27 (9th Cir. 1997) ............................................................. 11

*Winslow v. Harold G. Ferguson Corp.*
   (1944) 25 Cal.2d 274 ........................................................................................... 9

*Young v. Polo Retail, LLC,*
   2007 WL 951821, *8 (N.D. Cal. 2007) ............................................................... 12

**Other Authorities**

See A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993 ................................................. 9

Weil and Brown, California Practice Guide, *Civil Procedure Before Trial*,
   Chapter 14, section 14:145 ..................................................................................... 9

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.    SUMMARY OF MOTION**

Plaintiffs seek final approval of (1) the total maximum settlement fund of **$375,000.00** ("the Settlement"), (2) attorneys' fees in the amount of **$150,000**, (3) costs in the amount of **$45,000** to Class Counsel, (4) the costs of claims administration in the amount of **$5,100**, and (5) a service enhancement award to Plaintiffs Brandon Campbell and Ralph Maldonado in the amount of **$5,000** each, all of which were preliminarily approved by this Court on May 2, 2016 (Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 121), fully disclosed to the Class Members in the Notice of Proposed Class Action Settlement (**Exhibit "A"** to Declaration of Stephen Gomez ("Gomez Decl.")), and to which no Class Member objected (Gomez Decl. at ¶ 20).

This hotly-contested certified class action involved ongoing investigations, the exchange of written discovery and the analysis of over 3,000 pages of documents, taking and defending 5 depositions, successfully certifying the class, successfully prevailing on 2 appeals before the Ninth Circuit, successfully opposing a writ of certiorari before the United States Supreme Court, attending two arms-length mediations in San Francisco, and spending numerous hours of post-mediation settlement negotiations to arrive at this Settlement.  Class Counsel's fee request in the amount of **$150,000** was preliminarily approved by this Court on May 2, 2016 and is well below Class Counsel's actual lodestar of $461,940.50 for 1,049.87 hours of work.

The requested amounts of attorneys' fees, costs, and service enhancement award were fully disclosed to the class members when notice of the Settlement was mailed.  Most importantly, ***not a single class member objected to the request for attorneys' fees, costs, and enhancement award***.  The Settlement is fair and reasonable, the product of arms-length, good-faith negotiations by experienced counsel presided over by a highly-qualified mediator specializing in wage-and-hour class actions, and results in obtaining the maximum amount of money from Defendants who are on the verge of filing for bankruptcy for claims that could potentially be extinguished through legislation currently pending before Congress.  Accordingly, the Court should grant final approval of the $375,000.00 Settlement.

**2.** <u>PROCEDURAL HISTORY AND FACTUAL BACKGROUND</u>

This is a certified class and representative action against Defendants on behalf of all former "City Drivers" or "Local Drivers" who worked for Vitran Express, Inc. within the State of California that were not paid premium wages for allegedly working through rest and meal breaks during the Class Period. Plaintiffs' complaint was filed on May 7, 2010 and alleges causes of action for violations of California Labor Code sections 2698, 226.7, 512(a), 204, 201, 202, 226(a), 1174(d), and California Business and Professions Code section 17200 based on Defendant's alleged failure to provide legally mandated meal and rest breaks (the "Lawsuit").

Defendants ceased operations in California as of August 3, 2013 and Defendants have not employed any individuals in California since on or around that date. The issue of federal preemption under the Federal Aviation Administration Authorization of 1994 ("FAAAA") was appealed to the Ninth Circuit Court of Appeals, with the Court ultimately finding that California's meal and rest break laws are not preempted by the FAAAA and remanding the action to this Court on September 8, 2014 (writ of certiorari denied on May 5, 2015). The issue of preemption of California meal and rest break laws has subsequently been the subject of congressional legislation on two occasions: (1) the Denham Amendment to the 2015 Long-Term Highway Transportation Bill (otherwise known as the "Drive Act"); and (2) House Rule 4441 which was pending in Congress at the time the Parties agreed to settle this Lawsuit. Defendants contend that passage of House Rule 4441 would retroactively apply resulting in dismissal of the Lawsuit. The parties understood the risk involved depending on the outcome of the legislation and have considered the risks when negotiating the final Gross Settlement Amount.

The Parties participated in two private mediation sessions before Mark S. Rudy, Esq on August 26, 2011 and again on September 14, 2015. The Court granted Plaintiffs' Motion for Class Certification on November 12, 2015. (Order Granting Plaintiffs' Motion for Class Certification ECF No. 83.) In February 2016, Defendants informed Plaintiffs that they were on the verge of filing for bankruptcy. In light of a possible bankruptcy filing and pending legislation before Congress, the parties reached this proposed settlement, which is subject to Court approval.

3.   **SUMMARY OF THE SETTLEMENT TERMS**

Under the terms of the Settlement Agreement, Defendants agreed to pay a total maximum settlement amount of up to **$375,000.00** ("Gross Settlement Amount") on a claims-made basis subject to a guaranteed floor of eighty-five percent (85%).  All funds remaining from the Gross Settlement Amount after deduction of the Service Payment, PAGA Payment, Attorneys' Fees and Costs, all payroll taxes, and the Cost of Administration ("Net Settlement Amount") was made available for distribution to Class Members who timely submit a Claim Form to the Claims Administrator ("Qualified Claimants").

The Net Settlement Amount was determined by deducting the following amounts from the Gross Settlement Amount of $375,000.00:  (1) Class Counsel's attorneys' fees of $150,000.00 subject to Court approval; (2) Class Counsel's costs of $45,000.00 subject to Court approval; (3) the Claims Administrator's costs in the amount of $5,100.00; (4) service payments to Plaintiffs Brandon Campbell and Ralph Maldonado in the total amount of $10,000.00; (5) the PAGA Payment to the LWDA in the amount of $7,500.00, and (6) all employee and employer payroll taxes totaling $6,401.40.  The Net Settlement Amount of approximately $150,998.60 prior to deduction of all payroll taxes is subject to an eighty-five percent (85%) floor, meaning that the Parties agree that at least $128,348.81 shall be paid out of the Gross Settlement Amount to Qualified Claimants ("Guaranteed Floor Amount").

Payments to Class Members were calculated by dividing the total number of Qualifying Weeks Worked by an individual Qualified Claimant during the Class Period as reflected in Defendants' records by the total number of Qualifying Weeks Worked by all Class Members during the Class Period who did not exclude themselves from the Settlement and multiplying the resulting number by the Guaranteed Floor Amount ("Individual Settlement Award").  Each Class Member's unique Claim Form stated their estimated pre-tax Individual Settlement Award. Twenty-five percent (25%) of each Individual Settlement Award is to be characterized as income, subject to withholding taxes and issuance of an IRS Form W-2.  Seventy-five percent (75%) of each Individual Settlement Award is to be characterized as payment for penalties and interest for which an IRS Form 1099 shall be issued and no taxes will be withheld.

3

**4.     THE CLAIMS ADMINISTRATION PROCESS**

The court-appointed Claims Administrator, Simpluris, Inc. ("Simpluris"), took all necessary steps to effectuate the claims administration process as set forth in the Settlement Agreement.  On May 5, 2016, Defendants provided a list of the names, most recent mailing addresses and telephone numbers, social security numbers, and pertinent employment information for 177 Class Members ("Class List") to Simpluris.  (Gomez Decl. at ¶ 6.)  Simpluris used the National Change of Address database through the United States Postal Service to obtain updated addresses for all 177 Class Members.  (*Id*. at ¶ 7.)

On May 12, 2016, Simpluris mailed the Notice of Proposed Class Action Settlement, Claim Form, and Opt-Out Form (collectively "Notice Packet") to all 177 Class Members.  (*Id*. at ¶ 8.)  Simpluris took all efforts to skip trace and re-mail all returned Notice Packets.  (*Id*. at ¶ 10.)  On June 3, 2016, Notice Packets were mailed to an additional 7 Class Members.  (*Id*. at ¶¶ 11-12.)

As of June 30, 2016, Simpluris received Claim Forms from **80** Class Members ("Qualified Claimants").  (*Id*. at ¶ 14.)  These 80 Qualified Claimants claimed **60.45%** of the total work weeks worked by all 187 Class Members.  (Gomez Decl. at ¶ 15.)  Class Members who worked during the entire Class Period are estimated to receive **$3,248.14** from this Settlement prior to tax deductions.  (*Id*. at ¶ 17.)  On average, each of the 80 Qualified Claimants is estimated to receive **$1,604.36** prior to tax deductions.  (*Id*.)  There were ***no opt-outs, objections, or disputes*** of work weeks.  (*Id.* at ¶¶ 19-21.)

**5.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.**

A class action may not be dismissed, compromised, or settled without court approval.  Fed. R. Civ. P. 23(e).  Such approval of a class action settlement by a district court must follow a determination that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To determine whether a settlement agreement meets these standards, courts must consider a number of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

### A.     <u>The Strength of Plaintiffs' Case</u>

The proposed Settlement of $375,000.00 is well within the range of reasonableness. Based on the extensive discovery in this case, Class Counsel has determined that Plaintiffs and the Class have a reasonable likelihood of success at trial on the certified claims.  However, a settlement of this considerable monetary amount is preferable to the multi-tiered risks associated with proceeding with trial and a likely appeal, and is in the class members' best interests.  If Plaintiffs were to have rejected this $375,000 common fund settlement, the case would have to proceed through trial.  As with all trials, there is considerable risk for both sides, and that risk is amplified for both sides when the case involves 187 class members.

Were Plaintiffs to succeed in prevailing at a class-action jury trial, the resulting money judgment would likely be subject to many rounds of appeals, where, again, both sides would face considerable risk – for Plaintiffs their hard-fought jury verdict could be overturned, as could a favorable ruling for the defense.  In addition, money judgments must be bonded, and interest accrues during the pendency of appeal.  The Class Members still would not have yet received any money during the appeal process, and Class Counsel could have to spend years defending its judgment in possibly several rounds of appeal.

While there are considerable risks associated with a class action trial and resulting appeals, Class Counsel has taken class action cases all the way to the jury trial phase, and stood (and stand) ready and willing to do so again in this case.  That said, when presented with a settlement that will benefit the entire class in the very near future, the risk of later potentially recovering nothing, many years later, must be candidly recognized and evaluated.  For those reasons, Class Counsel is confident this proposed settlement is in the best interests of the class.

**B.**     <u>**Risk, Expense, Complexity, and Likely Duration of Further Litigation**</u>

The parties have actively litigated this case since it was initially filed on May 7, 2010. There have been ongoing investigations, pleading challenges, certification and judgment on the pleading motions briefed, several rounds of appeals extensively briefed and argued, and the exchange of written discovery including inspections of at least 4 facilities operated by Defendants and over 3,000 pages of documents.[1]  Furthermore, the parties engaged in two (2) arm's length mediation before Mark S. Rudy, Esq., who is a very well respected, experienced mediator who specializes in resolving California class action litigation.

During all settlement discussions, the parties exchanged information and discussed all aspects of the case including the risks and delays of further litigation, the risks to both parties, the evidence produced and analyzed, and the possibility of a trial and resulting appeals, among other things.  During all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture.  Arriving at a settlement that was acceptable to both parties was not easy.  Defendants and their counsel felt very strongly about Defendants' ability to prevail on the merits at trial.  Class Counsel believed that they would have prevailed at trial.  The parties heavily litigated the case up until a month before trial.  After much consideration by the parties as to their respective positions and risks in continued litigation, the parties agreed that this case was well suited for settlement given the costs and risks both sides faced in further, very protracted litigation.

The proposed Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at trial.  Class Counsel also conducted interviews of numerous Class Members, not to mention the Class Representatives.[2]  Class Counsel also reviewed over 3,000 pages of records and documents produced by both Plaintiffs and Defendant and performed significant research into the law concerning Defendant's defenses.[3]  The proposed Settlement was based on this incredibly large volume of facts,

---

[1]     Wheeler Decl. at ¶ 3.
[2]     *Id.*
[3]     *Id.*

evidence, and investigation.  And, Class Counsel has extensive experience in employment class actions, including extensive experience in California wage-and-hour litigation.[4]

### C.     Amount Offered in Settlement

The proposed Settlement of $375,000.00 represents an excellent resolution of this case. The proposed Settlement was calculated using information and data uncovered through formal discovery, case investigation and the exchange of information.  The proposed Settlement takes into account the potential risks and rewards inherent in any case and in particular with this case. Moreover, considering all of the facts in this case, the proposed Settlement amount represents a substantial global recovery for all Class Members.

The proposed Settlement provided for a Net Settlement Amount of at least **$150,998.60** that was made available to be claimed by the 187 Class Members.  The actual share of the Net Maximum Amount for each Qualified Claimant was based on the number of weeks they worked during the Class Period.  At least **80** Qualified Claimants submitted a claim in this settlement, claiming **60.45%** of the total work weeks worked by all 187 Class Members.  (Gomez Decl. at ¶ 15.)  Class Members who worked during the entire Class Period are estimated to receive **$3,248.14** from this Settlement prior to tax deductions.  (*Id*. at ¶ 17.)  On average, each of the 80 Qualified Claimants is estimated to receive **$1,604.36** prior to tax deductions.  (*Id*.)  Given the substantial risks and uncertainties in this case, the amount offered and the corresponding Individual Settlement Awards support final approval of the Settlement.

### D.     The Extent of Discovery Completed and Stage of Proceedings

The parties have actively litigated this case since it was initially filed on May 7, 2010. There have been ongoing investigations, pleading challenges, certification and judgment on the pleading motions briefed, the exchange of written discovery including inspections of at least 4 facilities operated by Defendants and over 3,000 pages of documents, taking and defending 5 depositions, successfully certifying the class, successfully prevailing on 2 appeals before the Ninth Circuit, successfully opposing a writ of certiorari before the United States Supreme Court, attending two arms-length mediations in San Francisco, and spending numerous hours of post-

---

[4]     *Id*. at ¶ 16.

mediation settlement negotiations to arrive at this Settlement.[5]  Class Counsel also conducted interviews of numerous Class Members, not to mention the Class Representatives.[6]  In February 2016, Defendants informed Plaintiffs that they were on the verge of filing for bankruptcy.  In light of a possible bankruptcy filing and pending legislation before Congress, the parties reached this proposed Settlement a month before trial based on this incredibly large volume of facts, evidence, and investigation.

**E.      Experience and Views of Counsel**

Class Counsel has extensive experience in employment class action law, including extensive experience in wage-and-hour class action litigation.[7]  The R. Rex Parris Law Firm has been appointed class counsel in dozens of employment class action cases, and has recovered hundreds of millions of dollars for California employees.[8]  Both parties' counsel were capable of assessing the strengths and weaknesses of the Class Members' claims against Defendant and the benefits of the proposed Settlement under the circumstances of the case and in the context a private, consensual settlement agreement.  Arriving at a settlement that was acceptable to both parties was not easy and during all settlement discussions, the parties conducted their negotiations at arms' length in an adversarial posture.  The proposed Settlement was based on an incredibly large volume of facts, evidence, and investigation.  Accordingly, Class Counsel believes that the proposed Settlement as a whole is fair, reasonable, and in the best interest of the Class Members.

**F.      Reaction of the Class Members**

The Settlement was well received by the Class – ***not a single class member objected to the Settlement***.  [Gomez Decl. at ¶ 20, emphasis added.]  Specifically, no objections were made as to the gross amount of the Settlement, the request for an enhancement award to Plaintiffs, or the request for attorneys' fees and costs.  California courts have consistently found that a small number of objectors indicates the class' support for a settlement and strongly favors final

---

[5]     Wheeler Decl. at ¶ 3.
[6]     *Id.*
[7]     Wheeler Decl. at ¶¶ 10-11.
[8]     See **Exhibit "C"** to Wheeler Decl.

8

approval.  *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 250-251 (2001) (final approval granted despite 20 objectors); *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal.App.4th 1135, 1152-1153 (2000) (final approval granted despite 9 objectors).

The lack of any objections speaks volumes about the fairness, reasonableness, and adequacy of this Settlement.  Accordingly, the Settlement is presumed as a whole to be fair, reasonable, and adequate and the Court should grant final approval of the entire Settlement.  *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1802 (1996).

6.  **L**EGAL **S**TANDARDS FOR **A**TTORNEYS' **F**EES IN A **C**LASS **A**CTION **S**ETTLEMENT.

Class Counsel seeks a fee award for their successful prosecution and resolution of this action, calculated as a percentage of the total value of benefits afforded the Class Members by the Settlement.  *Serrano v. Priest* (1977) 20 Cal.3d 25, 34; *Boeing Co. v. Van Gernert* (1980) 444 U.S. 472, 478; *see also Vincent v. Hughes Air West, Inc.* (9th Cir. 1977) 557 F.2d 759, 769.  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *In re Bluetooth Headsets Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011).  If the court opts to employ the percentage-of-recovery-method, "calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage award."  *Adoma v. Univ. of Phx., Inc.*, 913 F.Supp.2d 964, 981 (E.D. Cal. 2012).

In the present case, it is clear that the payments to the claiming class members constitute a common fund.  Under the common fund doctrine, courts have consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose injuries and/or damages are too small to economically justify individual representation.

Accordingly, in determining a reasonable common fund fee award, courts award fees to serve as an economic incentive for lawyers to bring class action litigation in order to achieve increased access to the judicial system for meritorious claims and to enhance deterrents to wrongdoing.  This is especially true in situations where the multiple similar alleged wrongs would not be economically feasible to pursue individually, such as in this case.  See A. Conte, *Attorney Fee Awards*, 2nd Ed. 1993, 104, p.6.

9

A common fund award is not dependent on a determination of the actual amount claimed out of the fund by those entitled.  It is the creation of the fund that is the crucial fact.  Indeed, in *Winslow v. Harold G. Ferguson Corp.* (1944) 25 Cal.2d 274, the California Supreme Court expressly held that "it is equitable that [the attorney's] compensation and expenses should come from the entire fund saved for all classes concerned before it is distributed."  *Id.* at p. 284.  Likewise, *Lealao* expressly recognizes that "in a traditional common fund case, [a percentage-based fee] may be calculated on the basis of the total fund made available rather than the actual payments made to the class."  *Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19, 51; *see also Boeing*, *supra*,  444 U.S. at p. 478 ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole").

In *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, the court definitively decided this issue.  In determining reasonable attorneys' fees, the court valued a settlement based on the total value of the settlement made  available to class members, and rejected an objection by certain class members that the settlement could not be valued (and therefore the fees not awarded) until the exact amount of the claims made could be determined.  *Id.* at p. 247.

Where there is one maximum amount to be paid to the class and the attorneys' fees by agreement represent a percentage of that sum, employment of the percentage method is the proper method.  *Lealao*, *supra*, 82 Cal.App.4th at p. 33.  If the percentage method were not employed here as to the maximum potential payment, then Class Members would be unjustly enriched at the expense of Class Counsel.  One reason the percentage method is employed is to avoid such unjust enrichment.  *See Brytus v. Spang & Co.* (3rd Cir. 2000) 203 F.3d 238, 232.

In common fund cases, a district court has discretion to choose either "the percentage-of-fund or the lodestar method" to assess the reasonableness of requested attorney's fees.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  When the percentage-of-fund method is chosen, 25% of the total settlement amount is the "benchmark."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,272 (9th Cir. 1989).  Any amount between 20-30% is the "usual range."  *Vizcaino*, 290 F.3d at 1047.  That amount may be "adjusted upward or downward to account for

10

any unusual circumstances involved in [the] case." *Id.* Although 25% is the "starting point," selection of the benchmark or any other rate "must be supported by findings that take into account all of the circumstances of the case." *Id.* at 1048. Even if a court elects to employ a percentage-of-fund method, a district court may "cross-check" this amount by calculating the lodestar. *Id.* at 1050. "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

## 7. THE ATTORNEYS' FEE REQUEST IS JUSTIFIED UNDER THE COMMON FUND METHOD

Class counsel seeks the approval of an attorneys' fee award equal to 40% of the total value of the settlement fund established by the settlement agreement ***that has been preliminarily approved by this Court***. (Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 121). An award of attorneys' fees as a percentage of a fund established by a settlement is well-established in Ninth Circuit jurisprudence; the Ninth Circuit's benchmark for such common fund awards is 25% of the common fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

This "common fund" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, has long been a staple of class action settlements in federal courts generally: "a lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).[9] Federal courts, and particularly the Ninth Circuit, have endorsed the percentage method as a fair way to calculate a reasonable fee when

---

[9]     The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund where the attorneys' unnamed class member "clients" have no express retainer agreement, those who benefited from the fund without contributing to those who created it would be unjustly enriched. *Boeing*, 444 U.S. at 478.

1   contingency fee litigation has produced a common fund.  *See*, *e.g.*, *Blum v. Stenson*, 465 U.S.

2   886, 900 n.16 (1984) (under common fund doctrine, "reasonable fee is based on a percentage of

3   the fund bestowed on the class"); *Six Mexican Workers*, 904 F.2d at 1311 (common fund fee is

4   generally "calculated as a percentage of the recovery"); *Paul, Johnson* 886 F.2d at 272.

5          The Ninth Circuit has made clear that when a fund is established which makes a pool of

6   money available to a class of persons, the attorneys' fees for the plaintiffs' counsel are properly

7   calculated as a percentage of the entire fund.  *See Williams v. MGM-Pathe Communications*, 129

8   F.3d 1026, 1026-27 (9th Cir. 1997).  In *Boeing*, the Court concluded that the attorneys for a

9   successful class may recover a fee based on the entire common fund created for the class, even if

10  some class members make no claims against the fund so that money remains in it that otherwise

11  would be returned to the defendants.  *Boeing*, 444 U.S. at 480-81; *see also Six Mexican Workers*,

12  904 F.2d at 1311; *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2006);

13  *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999); *Glass*

14  *v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. Jan. 26, 2007); *Young v. Polo*

15  *Retail, LLC*, 2007 WL 951821, *8 (N.D. Cal. 2007).

16         Although the Ninth Circuit established 25% as a "benchmark" for attorneys' fee awards

17  that are established out of a common fund, where, as here, circumstances merit it, "[t]hat

18  percentage amount can then be adjusted upward or downward to account for any unusual

19  circumstances involved in [the] case."  *Paul, Johnson*, 886 F.2d at 272.  Given the results

20  achieved and the difficulties attendant in litigating this case, an upward adjustment is warranted.

21         In *Vizcaino*, the Ninth Circuit laid out the factors to be considered in adjusting a fee

22  award from the "benchmark."  *See Vizcaino*, 290 F.3d at 1047-1050.  These are: (i) the size of

23  the fund (and thus the resulting size of the percentage fee award); the quality of the results

24  obtained by Plaintiffs' counsel; (ii) the risk taken on by Plaintiffs' counsel in accepting and

25  pursuing the case with no guarantee of victory or being paid for their time and effort; (iii)

26  incidental or non-monetary benefits conferred by the settlement; (iv) the effort expended by

27  Plaintiffs' counsel; (v) Plaintiffs' counsel's reasonable expectations based on the circumstances

28  of the case and fee awards in other cases; and, to a certain extent, the percentage fee award

12

originally contracted for between Plaintiffs and Plaintiffs' counsel. *Id* A consideration of the *Vizcaino* factors shows that Plaintiffs' counsel's request for 40% the total value of the settlement is exceedingly reasonable.

### A.   The Risks Assumed by Class Counsel Favor the Fee Award Sought

Class Counsel's assumed a very real risk in taking on this case. Plaintiffs, through their counsel, took on a national corporation with far more resources than Plaintiffs' counsel. Plaintiffs' counsel took the case on a contingency basis, and invested time, effort, and money with no guarantee of any recovery. In cases where the "recovery is far from certain," as here, an award of more than 25% of the common fund as attorneys' fees is appropriate. *In re* Washington *Public Power*, 19 F.3d at 1302; *see also Vizcaino*, 290 F.3d at 1048.

Plaintiffs' Counsel proceeded knowing there was a chance that Defendant would prevail and that even if Plaintiffs prevailed, there was a chance that the case would take years to bring to trial and would not be resolved without an appeal. The risk of no recovery in complex class actions of this type is very real. There are numerous cases where Plaintiffs' counsel in contingent-fee cases such as this one, after devoting thousands of hours and advancing significant sums in out-of-pocket expenditures, received no compensation whatsoever. *See, e.g.*, *Armstrong v. Whirlpool Corp.*, 2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) (denying class certification of racial harassment claims); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important favor in approving the class action settlement.). From the outset Defendant has adamantly denied any liability and continues to do so today.

This was a complicated and uncertain case in which Defendant vehemently contested liability. Defendants claimed throughout the litigation that meal breaks were preempted by federal law. Defendants took Plaintiffs up through the appellate courts and even to the United States Supreme Court on this very issue. The risks of the case and litigation obstacles were great, but Class counsel, nevertheless, achieved an extremely successful result, and thus, this first *Vizcaino* factor militates in favor of the fee award sought by Class Counsel. *See also* Local Rule

54-293 factors (2) ("the novelty and difficulty of the questions presented"); (3) ("the skill requisite to perform the legal service properly"); and (10) ("the 'undesirability' of the action").

**B.     Class Counsel Obtained an Excellent Result for the Class**

The results obtained by Plaintiffs' counsel here are remarkable in light of Defendants' potential bankruptcy filing and the pending litigation in Congress.  The total value of this Settlement is $375,000.  Class Members who have worked from May 7, 2006 to August 3, 2013 may receive a Settlement Award of up to **$3,248.14** if they made a claim.  This is remarkable because the settlement compensates the Class Members for meal breaks that this Court once thought were preempted by federal law.  As a result of the settlement, many of the Class Members will be provided with a recovery for claims that could be preempted if the current legislation is passed.

The fairness of this fee award is further supported by the high quality of Class Counsel's legal representation as described above and in the declaration.  Class Counsel's highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiffs to successfully settle this case, affording redress to the entire proposed settlement class, and avoided the inevitable expense and risk attendant with protracted litigation.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.[10]  Here, as set forth above, Defendant was represented by experienced and skilled lawyers from a law firm with a deserved reputation for vigorous advocacy in the defense of complex employment class action cases.  The ability of Plaintiffs' Counsel to obtain this Settlement in the face of such formidable legal opposition confirms the quality of Plaintiffs' Counsel's representation.  Accordingly, this factor strongly supports the requested fee.

**C.     Class Counsel's Award is Relatively Modest**

Here, Plaintiffs' counsel seeks 40% of the value of the settlement fund of $375,000.  Most Ninth Circuit cases consider the size of the settlement fund for purposes of evaluating fee requests, in relation to how large it renders the resulting fee award.  *See, e.g., In re Washington*

---

[10]     *See In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 U.S. Dist. LEXIS 29068, at *35 (E.D.N.Y. Aug. 25, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

14

1   *Public Power*, 19 F.3d at 1297 ("the percentage of an award generally decreases as the amount of

2   the fund increases").  The fee request is less than the Net Settlement Amount that was available

3   to be claimed by the Class.  Accordingly, the fee request here is in line with Ninth Circuit

4   precedent.

5       **D.**    <u>**Class Counsel Obtained Swift and Efficient Relief for the Class**</u>

6         While the *Vizcaino* Court considered the protracted litigation in that case, it stressed:

7   "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a

8   case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely

9   result for class members in need of immediate relief."  *Vizcaino*, 290 F.3d at 1050, n. 5.  In fact,

10  the Court acknowledged that using time expended as a proxy for the effort expended on or

11  success of a case "creates incentives for counsel to expend more hours than may be necessary on

12  litigating a case so as to recover a reasonable fee," and that such an evaluation "does not reward

13  early settlement."  *Id.*  Here, Class Counsel achieved a substantial benefit for class members in a

14  very timely fashion, providing class members with substantial and certain relief much sooner

15  than if this matter had been extensively litigated.  There is no doubt that either side would have

16  appealed the trial verdict.

17        Moreover, Class Counsel did not sacrifice due diligence in achieving an efficient

18  resolution of this case.  As discussed above, Class Counsel reviewed thousands of relevant

19  documents produced by Defendants.[11]  In addition, prior to mediation, Plaintiffs' counsel

20  conducted interviews of Class Members concerning their claims.  Hence, Plaintiffs' counsel's

21  request for fees is reasonable here.

22      **E.**    <u>**The Skill and Reputation of Plaintiffs' Counsel Justifies the Fee Requested**</u>

23        As shown in the accompanying declaration, Class Counsel are recognized leaders in

24  employment class actions, and put the full use of their skill and experience to work in the service

25  of Plaintiffs and the class in this case.[12]  As a result, these factors favor the fee award sought by

26  Class Counsel. The R. Rex Parris Law Firm has dedicated itself to this case.  Class Counsel are

27

28
    [11]    Wheeler Decl. at ¶ 3.
    [12]    *Id*. at ¶ 16.

15

nationally-recognized trial and class-action attorneys and employed their knowledge, skill, and experience in bringing to conclusion a very favorable result in a unique, hard-fought litigation.[13] The goal achieved is the extraordinary result of obtaining $375,000.00 for the Class.  Class counsel respectfully requests an award of attorneys' fees equal to 40% of that amount.

**F.   CLASS COUNSEL'S LODESTAR WELL EXCEEDS THE FEE REQUEST**

Ninth Circuit law regards both the percentage and lodestar methods as acceptable ways to calculate fees for class counsel in class action settlements.  *Vizcaino*, 290 F.3d at 1047; *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006-1008 (9th Cir. 2002).  "Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate."  *Fischel*, 307 F.3d at 1006.

Class Counsel provided a chart concerning the time worked on the case with a description of the work they performed and the amount of time spent on each task (which, as shown below, are the elements that determine Plaintiffs' counsel's lodestar).[14]  Here, Class Counsel's lodestar is currently at $461,940.50, which is ***3 times the fee request without applying any multiplier***.[15]  Class Counsel obtained this settlement efficiently, affording redress to the Class Members swiftly, without forcing them to wait through protracted, and risky, litigation.  Class Counsel was able to settle this case for a substantial amount under the circumstances, especially considering the difficulty of the case and Defendant's defenses.  Plaintiffs' counsel includes experienced class action attorneys.[16]  They used their full abilities to achieve the successful result here.  As shown above, the award requested here is fully in line with awards employed in much larger cases, where the fees requested are many times the fees requested here.

**8.   CLASS COUNSEL'S LITIGATION COSTS AND EXPENSES ARE REASONABLE.**

As set forth in the declaration of Class Counsel, the total costs Class Counsel has incurred by the time of final approval will be approximately **$45,000**.[17]  The costs incurred include the

---

[13]   *Id.*
[14]   Wheeler Decl. at ¶ 6.
[15]   **Exhibit "2"** to Wheeler Decl.
[16]   Wheeler Decl. at ¶ 16.
[17]   *Id.* at ¶ 18.

16

costs for filing the complaint, the cost to take and defend 5 depositions and to obtain certified copies of the deposition transcript, mediation costs with a reputable wage-and-hour class action mediator traveling to San Francisco for the mediation, as well as costs relating to Class Counsel traveling to court appearances. These expenses are reasonable and necessary in the prosecution of this class action. Accordingly, Class Counsel requests that the Court preliminarily approve **$45,000** to Class Counsel for litigation costs and expenses.

9.    **CLAIMS ADMINISTRATION COSTS TO SIMPLURIS, INC. ARE REASONABLE**

As set forth in the Declaration of Stephen Gomez of Simpluris, Inc. ("Simpluris") the total costs incurred by Simpluris for notice and claims administration is $5,100. (Gomez Decl. at ¶ 22.) These costs incurred are for mailing the Notice Packets to 187 Class Members, performing address traces on undeliverable addresses, re-mailing the Notice Packets to any new addresses obtained, maintaining a toll-free telephone number to process class member inquiries, handling Class Member inquiries, setting up a qualified settlement fund account, calculating each Claimant's individual settlement awards and preparing the associated tax forms, and mailing settlement checks and tax documents. The Claims Administrator is a necessary third-party to the settlement process. Accordingly, the Court should grant final approval of payment of $5,100 to Simpluris, Inc.

10.    **THE *REDUCED* SERVICE ENHANCEMENT AWARDS ARE FAIR AND REASONABLE**

Plaintiffs request that the Court approve a service enhancement award in the total amount of $5,000 to Plaintiff Brandon Campbell and $5,000 to Plaintiff Ralph Maldonado for their efforts in assisting in this class action lawsuit. These amounts have been preliminarily approved by the Court and are ***less than*** the amount originally requested by Plaintiffs. (Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 121.) It is within the Court's discretion to award to the Class Representative for his efforts and work. *Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to a single class representative). The criteria courts may consider in determining whether to make an incentive award include:  1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties

17

encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Id.*

Service or incentive payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class. Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."). In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

Incentive awards are particularly appropriate where the "class representative[ ] remain[s] fully involved and expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.,* No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006). Plaintiffs spearheaded this lawsuit.[18] They committed time to the litigation by reviewing pleadings, communicating with class counsel during the prosecution of this case, and sitting for deposition, warranting an enhancement award.[19] *See Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW (EMC), 2010 WL 1687832, *17 (Apr. 22, 2010) (approving a $20,000 award where plaintiff "made herself available for deposition on two separate occasions; met with Class Counsel on six separate occasions; attended the full-day Court-ordered appraisal

---

[18]     Campbell Decl. at ¶ 5; Maldonado Decl. at ¶ 4.
[19]     Campbell Decl. at ¶¶ 6-15; Campbell Decl. at ¶¶ 5-10.

hearing; spoke with Class Counsel and their staff on many occasions; reviewed all major pleadings; and repeatedly responded to interrogatories and document requests.")

The enhancement award is further justified because Plaintiffs have agreed to the full general release of their claims against Defendant, which is much broader than the release that applies to the class.[20]  Broad releases of the named plaintiff's claims that go beyond what is required of the class members are taken into account when considering the reasonableness of the incentive award.  *See Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *3 (N.D. Cal. June 30, 2014); *Holman v. Experian Info. Solutions, Inc.*, No. 11-CV-0180 CW (DMR), 2014 WL 7186207, at *6 (N.D. Cal. Dec. 12, 2014) (finding that the class representative is entitled to an incentive award "for his service to the class and for his broad release of all claims, known or unknown, against [the defendant]"); *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving the incentive award in part because the plaintiff executed "a general release that will resolve her individual claims, as well the class claims").

Notably, the award is also well within the acceptable range awarded in similar cases. *See, e .g., Van Vranken v. Atlantic Richfield*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (holding that incentive awards of $50,000 to each named plaintiff was fair and reasonable); *Singer v. Becton Dickinson and Co.*, 08-cv-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013) (holding that incentive awards of $15,000 for each of the three named representatives was "well within the range awarded in similar cases"); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D.Ohio 2001) (approving an award of $50,000 where the class representative "has been instrumental in bringing [the] lawsuit forward" and "has performed numerous tasks in association with [the] litigation").  The ***reduced*** service enhancement awards to Mr. Campbell and Mr. Maldonado are therefore appropriate and justified as part of the overall settlement.

/ / / /

---

[20]     **Exhibit "1"** to Wheeler Decl.

19

**11.** <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the **$375,000.00** Settlement, Class Counsel's request for attorneys' fees in the amount of **$150,000**, Class Counsel's request for reimbursement of litigation costs and expenses in the amount of **$45,000**, **$5,000** as a service enhancement award to Plaintiff Brandon Campbell, **$5,000** as a service enhancement award to Plaintiff Ralph Maldonado, claims administration costs in the total amount of **$5,100** to Simpluris, Inc., and **$7,500** to the LWDA.


DATED:  June 30, 2016                **R. REX PARRIS LAW FIRM**


                                     By: _/s/ Kitty K. Szeto_____
                                         Kitty K. Szeto
                                         Attorneys for Plaintiffs